UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CRIM. NO. SA-23-CR-188 JKP |
| GERALD TALMAN BRANN, | |
| Defendant. | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

COMES NOW the United States of America, by and through Assistant United States Attorney Tracy Thompson, and submits this sentencing memorandum for the Court's consideration in determining an appropriate sentence for the defendant, Gerald Talman Brann. For the reasons stated below, the Government recommends a sentence of 30 years, which is the advisory Guidelines range, to be followed by a lifetime term of supervised release.

### Introduction

On the 28th day of November 2023, the defendant pleaded guilty to the Sexual Exploitation of Children, a violation of 18 U.S.C. § 2251. See Cr. Dckt. Rpt. #5:23-cr-00118-JKP. The government and the defendant received the presentence investigation report ("PSR") timely, and sentencing is scheduled for the 1st of May 2024. The PSR correctly calculates the criminal history category of V and a Guidelines sentencing range for imprisonment of life, but is restricted due to the statutory maximum sentence of 360 months. PSR ¶ 82. Furthermore, the Sentencing Guidelines recommend imposition of the maximum term of supervised release, lifetime, for the defendant who has committed a sex offense. See U.S.S.G. § 5D1.2(b)1.

1

The government requests the Court impose a term of 30 years imprisonment followed by a lifetime term of supervised release considering the Guidelines, Guidelines Policy Statements and 18 U.S.C. § 3553(a) factors. Because the defendant engaged in a repeated pattern of sexual abuse and exploitation 30 years imprisonment is reasonable.

Defendant Gerald Brann is a dangerous predator.  His involvement and eventual marriage to Veronica Solis who was the single parent of 4 young children, resulted in the perfect storm of child abuse and exploitation. Not only did Defendant Brann and Solis sexually assault CV1, along with many of her siblings, but they recorded the sexual abuse and shared it with others who receive sexual gratification from the sexual abuse and humiliation of young children.  Defendant Brann came to the attention of the FBI after a user of an account in the name of Veronica Solis posted several images of the sexual abuse and exploitation of a young girl that appeared to have been going on for several years.  The investigation revealed not only did the defendant sexually abuse and exploit CV1, for years, but that he sexually assaulted and exploited other children as well.

The defendant and his current wife were married on September 2, 2019.  That date is significant as it is the date that the video, which is the subject of Count Two, was produced. With her hair in an updo and her fingernails painted lavender, CV1 is seen in videos with the defendant, sitting on crisp white sheets on a bed in a hotel room.  She is instructed, by Brann, as to how to masturbate Brann's penis and is scolded for allowing her allowing her little 6 year old fingernails to scratch Brann's erect penis. PSR ¶ 22.  On the day of his wedding, instead of focusing on his marriage to his new wife, the defendant focused on CV1 by sexually assaulting her and recording it.  He documents himself rubbing her bare vagina for his own pleasure even though she clearly says "oww" letting him know he's hurting her.  In the hotel room, where presumably he is supposed to be consummating his marriage to his new wife, the defendant has instead positioned

CV1 with her legs spread apart so he can record the lascivious display of her genitalia to share with other pedophiles and brag about his exploits. *Id.*

Defendant Brann, and the mother of CV1, took turns sexually abusing and exploiting CV1 and sharing the recordings of her exploitation with each other as they planned and schemed about other sexual atrocities. They texted back and forth while Brann was driving his truck, encouraging the others to sexually assault the children and to record and share those sexual assaults so that the absent individual could also enjoy the malevolent acts committed against CV1 and the other children. PSR ¶ 23. Their behavior lasted years, as shown from the dates they distributed the child sexual abuse material to others via online groups dedicated to the sexual exploitation of children, as well as the forensic examination of their phones.

Defendant Brann also moved his victims across the country in an attempt to avoid getting caught since Child Protective Services in San Antonio, TX had already opened (and apparently closed) an investigation involving the sexual abuse of CV1 by Brann. See CPS Investigation Report #48615223. In April 2021, CPS received a referral after CV1 disclosed at school that she had been sexually touched on her genitals by defendant Brann and that he took her on the road with him while he worked as a truck driver. CV1 had also told a friend what was happening to her. When interviewed by CPS, CV1 said that her mother was aware of the sexual abuse and instructed CV1 not to talk about it. After a safety plan was completed, it was recommended the case be closed. It is unknown whether any criminal charges were being investigated. Coincidentally, it was shortly thereafter that Defendant Brann moved the victim and her siblings across the country where no one knew about his sexual abuse of the child and where the child would have no trusted individual in whom to confide. The sexual abuse of CV1 continued.

The defendant used this little girl to not only satisfy his own sexual fantasies and desires, but also to provide some sick sense of clout online with others like him who receive sexual gratification from the abuse of children. PSR ¶¶ 15-18.  He exploited her by sharing the worst moments of her young life with others to use for their sexual gratification.   Such actions not only normalize the sexual abuse of children, but they encourage others to sexually abuse and exploit children so that more children are being victimized.

The defendant has now admitted producing sexually explicit images of a little girl he was entrusted to protect from the evils in the world.  PSR ¶¶ 31. Instead of protecting her, the defendant is the one that has caused lifelong harm to her.  He normalized sexual abuse for the victim in this case, and probably some of the other victims he sexually abused.  As discussed in paragraph 27 of the PSR, Brann took the victim with him when he traveled in his truck so that he could sexually abuse and exploit her at his whim.   He rewarded her with a sex toy that she brought with her to foster case after being convinced by Brann that it was a token of his fondness for her. She was oblivious to the inappropriateness of the gift and his purpose in gifting it to her. PSR ¶ 27.

This defendant's lengthy abuse and exploitation of CV1 merits a 30-year term of imprisonment followed by a lifetime term of supervised release, and is reasonable in light of the Guidelines, Guidelines Policy Statements and 18 U.S.C. § 3553(a) factors.[1]   Having calculated

---

1 Section 3553(a) requires the Court to consider the following factors in determining the appropriate sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established by the Sentencing Guidelines; (5) any pertinent Guidelines policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1).

the Guidelines range as 360 months to be followed by a Lifetime term of supervised release, the Court's reasoning must be guided by the sentencing considerations set forth in 18 U.S.C. § 3553(a). *United States v. Smith*, 440 F.3d 704, 706 (5th Cir. 2006). The recommended sentence also "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Those considerations reflect "the 'just deserts' concept, which carries the need for retribution, the need to make the punishment fit the crime, and the need not just to punish but to punish justly." *Irey*, 612 F.3d at 1206. The requirement is "not merely that a sentencing court . . . be stingy enough to avoid [a sentence] that is too long, but also that it be generous enough to avoid one that is too short." *United States v. Irey*, 612 F.3d 1160, 1167 (11th Cir. 2010) (en banc).

The Fifth Circuit has recognized that sex offenders have a high rate of recidivism. *See United States v. Allison*, 447 F.3d 402, 405-406 (5th Cir. 2006) (Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders). In determining what sentence to impose, one of the § 3553 factors to consider is to protect the public from further crimes of the defendant. A sentence of 30 years followed by a lifetime term of supervised release would "afford adequate deterrence to criminal conduct" and would "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(B)-(C). The defendant is a dangerous sex offender, because (1) he engaged in direct sexual contact with multiple minor victims, (2) he repeatedly exploited CV1 over a period of years, and (3) even after CV1 disclosed the sexual abuse and CPS began investigation, he continued to produce child pornography and moved the family across the country. A sentence of 30 years imprisonment followed by a lifetime term of supervised release is within the Guidelines range, and therefore reflects the kinds of sentences and the sentencing range established by the Sentencing Commission in its Guidelines

and policy statements. See 18 U.S.C. § 3553(a)(3)-(5).

Individuals that produce child pornography are consistently sentenced to 30 years and more followed by a lifetime term of supervised release in the Western District of Texas. See, e.g., *United States v. Wade Perkins*, SA-12-CR-1108 FB (30 years and lifetime supervision for sexual abuse and exploitation of the son of his girlfriend and enlisting the girlfriend to produce child pornography when he was absent from the home); *United States v. Kimberly Epperson*, SA-12-CR-1109 FB (28 years and 10 years supervision for sexual exploitation of her son at the request of Perkins); *United States v. Gemase Simmons,* SA-12-CR-108 FB (698 years and lifetime supervision for sexual exploitation of children); *United States v. Xavier Drescher*, SA-22-CR-385 XR (30 years and lifetime supervision for sexual exploitation of children); *United States v. Dennis McCarthy,* SA-21-CR-008 JKP (30 years and lifetime supervision for sexual exploitation of children); *United States v. Daniel Vesa*, SA-19-CR-193 DAE (30 years and lifetime supervision for sexual exploitation of children); *United States v. Abiel Saldivar*, SA-22-CR-083 JKP (30 years and lifetime supervision for sexual exploitation of children); *United States v. Miguel Garcia*, SA-21-CR-119 JKP (30 years and lifetime supervision for sexual exploitation of children);

A sentence within the guideline range of 30 years followed by a lifetime term of supervised release would avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(6). Lifetime supervised release is reasonable "Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Supervised release is not a punishment in lieu of incarceration. *United States v. Granderson*, 511, U.S. 39, 50 (1994). The life term recommendation contained in Section 5D1.2(b) reflects powerful evidence indicating that recidivism rates for sex offenders do not appreciably decline as offenders age. See H.R. Rep. No.

6

107-527, at 2 (2002) (discussing the merits of a life term of supervised release for sexual offenders). Because, in sex crimes cases, there is no reason to believe that the need for supervision inherently decreases with time, Congress found lifetime supervised release to be appropriate and directly inserted such a recommendation into the Guidelines. *Id*. More specifically, passage of 18 U.S.C. § 3583(k) recognized the long-standing concerns of Federal judges and prosecutors regarding the inadequacy of the existing supervision periods for sex offenders, particularly for the perpetrators of child sexual abuse crimes, whose criminal conduct may reflect deep-seated aberrant sexual disorders that are not likely to disappear within a few years of release from prison. Many of these offenders need long term or lifetime monitoring and oversight. H.R. CONF. REP. NO. 108-66, at 49-50 (2003), reprinted in 2003 U.S.C.C.A.N. 683, 684.

Federal District Judge John R. Adams, in *United States v. Cunningham*, 680 F. Supp. 2d 844, 847 (N.D. Ohio 2010), used a quote attributed to Nelson Mandela: "There can be no keener revelation of a society's soul than the way in which it treats its children." *Id.* at 847.   He continued, "Given the recent statistics surrounding child pornography, we are living in a country that is losing its soul." *Id.*   Any sentence below the statutory maximum, which is the advisory guideline range in this case, ignores the public's repulsion and horror at the thought of someone using an innocent child to fulfill one's own warped sexual desires. It ignores the atrocity, and lifelong harm to the victims of sexual abuse whose images are traded like baseball cards. These are crimes of violence and should be treated as such.

## CONCLUSION

When the Court considers all the factors enumerated in 18 U.S.C. § 3553(a), the Guidelines and Guidelines Policy Statements, a Guidelines sentence of 30 years imprisonment followed by a Lifetime term of supervised release is the reasonable and appropriate sentence. Such a sentence

generally deters the behavior exemplified by the defendant, imposes a reasonable sentence given the defendant's criminal conduct, imposes a sentence that will promote respect for the law, considers the kinds of sentences available and the sentencing range established by the Guidelines, will protect the public from further crimes of the defendant, and avoids unwarranted sentencing disparities among similarly situated defendants.

Respectfully submitted,

JAIME ESPARZA
United States Attorney

By:         /s/
TRACY THOMPSON
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I, Tracy Thompson hereby certify that on the 29th day of April 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

*Robbie Ward*
*attorney for defendant Gerald Talman Brann*

/s/
TRACY THOMPSON
Assistant United States Attorney

8